**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHAEL CLAXTON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:24-cv-00840 (LLS) |
| UNIVISION COMMUNICATIONS, INC., | ) | |
| Defendant. | ) | |

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................8

*Boyce Motor Lines v. United States*,
342 U.S. 337 (1952)....................8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................6

*Exch. Listing, LLC v. Inspira Techs., Ltd.*,
661 F. Supp. 3d 134 (S.D.N.Y. 2023)....................9

*Golden v. NBCUniversal Media, LLC*,
2023 WL 5434378, --- F. Supp. 3d ---- (S.D.N.Y. Aug. 23, 2023)....................3, 4, 5

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
230 F.3d 549 (2d Cir. 2000)....................8

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................6

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)....................7

*In re Nickelodeon*,
827 F.3d at 267....................6, 7

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017)....................3, 4, 5

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)....................5, 7

*Salazar v. Nat'l Basketball Ass'n*,
2023 WL 5016968, --- F. Supp. 3d. ---- (S.D.N.Y. Aug. 7, 2023)....................3

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022)....................6

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710....................1, 3, 5

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6)....................2

https://help.innovid.com/hc/en-us/articles/11012580679068-FAQs-Analyzing-the-Data....................9

New York City Hall Park. Available at https://www.latlong.net/Show-Latitude-Longitude.html....................8

S. REP. 100-599....................1

## INTRODUCTION

Plaintiff Michael Claxton brings this Complaint against Univision Communications, Inc. ("Univision") under the Video Privacy Protection Act ("VPPA"), a narrow privacy statute that prohibits a "video tape service provider" from disclosing the "personally identifiable information" of a "consumer." Because the Complaint fails to plausibly allege that Plaintiff is a "consumer" under the VPPA or that Univision (the alleged "video tape service provider") disclosed his "personally identifiable information" under the VPPA, the Complaint fails to state a claim and should be dismissed.

## BACKGROUND

### The VPPA

After a newspaper published a profile based on films rented by Judge Robert H. Bork and his family from a local video store, Congress enacted the VPPA to protect privacy in the selection and viewing of home movies. S. REP. 100-599 at 5. The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing]" to a third party "personally identifiable information" concerning any "consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). And the VPPA defines "personally identifiable information" to mean "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]" *Id.* § 2710(a)(3).

### Plaintiff's Allegations

Univision is the leading Spanish-language media company in the United States. Complaint ¶ 12. Among other platforms, Univision operates www.tv.univision.com (the "Website"), which presents Spanish-language news, sports, and entertainment. *Id.* To access more than a limited

preview of video content on the Website, a visitor must have a subscription to a TV provider such as Verizon (a "TV Provider") and log in through their TV Provider. Complaint ¶ 12.

Plaintiff alleges that he "logged into the Website using his Verizon FIOS TV Provider credentials in order to access the Website's restricted pre-recorded videos." *Id.* ¶ 5 Besides Plaintiff's act of logging in through his TV Provider, the Complaint identifies no act Plaintiff undertook to access videos on the Website. *See id.*

Plaintiff alleges that Univision caused his "video consumption to be sent along with his personally identifiable information . . . to unauthorized third parties—including Innovid and Google—" when he requested and viewed videos on the Website. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the complaint must contain "more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). The facts alleged, if true, must give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

Plaintiff's Complaint fails to state a claim because it alleges no facts that could plausibly support a finding (1) that accessing content on the Website through Plaintiff's Verizon subscription transforms him into a Univision "subscriber" under the VPPA or (2) that the information allegedly transmitted by the Website amounts to "personally identifiable information" under the VPPA.

### I. PLAINTIFF IS NOT A "SUBSCRIBER" UNDER THE VPPA.

The VPPA defines "consumer" to mean "any renter, purchaser, or subscriber of goods or

services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1). Plaintiff alleges that he accessed video content on the Website by logging in "using his Verizon FIOS TV Provider credentials." Complaint ¶ 5. Plaintiff does not allege that he "rented" any goods or services from Univision, so he cannot be a "renter" under the VPPA. Plaintiff also does not allege that he "purchased" any goods or services from Univision, so he cannot be a "purchaser" under the VPPA. Accordingly, to survive a motion to dismiss, Plaintiff must demonstrate that he is a "subscriber" of goods or services from Univision. He does not and he cannot.

"[T]o be a 'subscriber' under the VPPA requires an 'ongoing commitment or relationship between the user and the entity which owns and operates the [service].'" *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858, 2023 WL 5434378, at *9, --- F. Supp. 3d ---- (S.D.N.Y. Aug. 23, 2023) (quoting *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017)). "A 'common thread is that 'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Salazar v. Nat'l Basketball Ass'n*, 2023 WL 5016968, at * 8, --- F. Supp. 3d. ---- (S.D.N.Y. Aug. 7, 2023) (quoting *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255–56 (11th Cir. 2015)). Or, as stated in *Austin-Spearman v. AMC Network Ent. LLC*, a "subscriber" under the VPPA, "[w]hatever the nature of the specific exchange," must have a "deliberate and durable affiliation with the [video tape service] provider." 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015).

Plaintiff identifies no "ongoing commitment or relationship" or "deliberate and durable affiliation" between himself and Univision. As stated, Plaintiff alleges that he "logged into the Website using his Verizon FIOS TV Provider credentials." *See* Complaint ¶ 5. Although Plaintiff might have an "ongoing commitment or relationship" with Verizon as the result of his subscription to the Verizon FIOS TV service, Plaintiff's "relationship" with Univision is not "any form of

bilateral relationship, but merely the accessing of a service by a user." *Golden*, 2023 WL 5434378, at *9.[1]

The Eleventh Circuit's decision in *Perry* illustrates this point decisively. In *Perry*, the plaintiff claimed that an app provided by CNN (the "CNN App"), which he downloaded for free on his mobile device, transmitted information in violation of the VPPA. *Perry*, 854 F.3d at 1338–39. Plaintiff accessed the videos on the CNN App via his subscription with his cable provider. The plaintiff claimed that he was a CNN "subscriber" because his subscription with his cable provider granted him access to exclusive content on the CNN App. *Id* at 1343. The Eleventh Circuit rejected this argument, reasoning that the plaintiff's decision to use his cable provider subscription to watch CNN content on his mobile device "rather than on his television" did not "somehow convert him into a subscriber of CNN." *Id.* The plaintiff could access this content on the CNN App "<u>solely</u>" through his "separate relationship with his cable television provider," as made "clear" by the fact that the plaintiff "ha[d] to select his cable television provider," had to "use[] the credentials associated with his cable television provider's account (not a separate CNN account)," and had access to CNN content both through his television and through the app. *Id.* at 1343. Other than "acknowledging in the app that he has a cable television subscription," there was "no indication that Perry had engaged CNN in any other way" to access this restricted content. *Id. Perry* concluded that using his cable television provider to access content was "insufficient to create the requisite 'ongoing commitment or relationship' with CNN." *Id.* (quoting *Ellis*, 803 F.3d at 1256–57).

---

[1] Plaintiff also asserts that he is a subscriber because, by virtue of his use of the Website, Univision allegedly obtained information about Plaintiff's cable provider, his "geolocation," cookies, and the videos Plaintiff watched. Complaint ¶ 39. But this argument—that a visitor becomes a subscriber if the service obtains data about the visitor—has already been rejected by the courts. For example, *Perry* reasoned that "such a broad definition of subscriber" would "eliminat[e] the condition that a subscriber have an 'ongoing commitment or relationship' with the video tape service provider." *Perry*, 854 F.3d at 1344, n.6.

As in *Perry*, Plaintiff's decision to use his subscription with Verizon Fios TV to watch Univision content on the Website "does not somehow convert him into a subscriber of [Univision]." *Id.* at 1343. To access Univision's content, Plaintiff did not "engage [Univision] in any way" other than to identify Verizon as his TV Provider, but instead accessed the content "solely" through his "separate relationship with [Verizon]" using his Verizon log-in credentials. *Id*. (emphasis in original). Plaintiff's "ephemeral investment" associated with navigating to the Website "is simply not enough to consider him a "subscriber," as he is free to cease using the Website "'without consequence whenever he likes.'" *Id*. at 1344 (quoting *Ellis*, 803 F.3d at 1257). "At most, the [Verizon] subscription shows that [Plaintiff] is a subscriber of his [TV Provider.]" *Id*.

Because Plaintiff has failed to plausibly allege that he is a renter, purchaser, or subscriber of goods or services from Univision, he is not a "consumer" under the VPPA and the motion to dismiss should be granted.

## II. PLAINTIFF FAILS TO ALLEGE DISCLOSURE OF "PERSONALLY IDENTIFIABLE INFORMATION."

The VPPA prohibits the disclosure of "personally identifiable information," defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Courts have interpreted "identifies a person" to require "that a video tape service provider have disclosed information that 'at the very least, identif[ies] a *particular* person—not just an anonymous individual—and connect[s] this particular person with his or her viewing history.'" *Golden*, 2023 WL 5434378, at *5 (quoting *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (emphasis in original). "'There are, in other words, three distinct elements [in the VPPA's definition]: the consumer's identity; the video material's identity; and the connection between them.'" *Id*. (quoting

*In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (alterations in original)). "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095.

Further, the information must "readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon*, 827 F.3d at 267; *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting the Third Circuit's "ordinary person" standard because the VPPA "looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it" and because it "better informs video service providers of their obligations under the VPPA.")

The Complaint claims that two items of information allegedly transmitted by the Website permit Google and Innovid to identify the particular person who watched a video: a "Google and Innovid unique ID" and "precise geolocation." Neither is sufficient to identify a particular person.

**A. The allegedly disclosed Google and Innovid "unique ID" cannot identify a particular person.**

The Complaint alleges that the Website transmits the Google and Innovid "unique ID" of each visitor. *See* Complaint ¶ 17. The Complaint, however, does not allege what this "unique ID" is, how it is assigned, or how an ordinary person can determine the identity of the person to whom the ID is assigned. At most, the Complaint alleges that the "unique ID" is a series of digits assigned to the visitor when watching the video, for example, "1832080456." *See* Complaint ¶ 22. But an anonymous identification number does not permit an ordinary person to determine the identity of the use to whom the number is assigned. *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022) (dismissing VPPA claim based on disclosure of a user ID) (citing *In re Nickelodeon*, 827 F.3d at 262). Rather, a "unique ID" merely allows one anonymous visitor to be distinguished from

another anonymous visitor. *See, e.g., In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *9–11 (N.D. Cal. Apr. 28, 2014) (collecting cases that unique identifiers do not constitute personally identifiable information). The Complaint alleges no facts plausibly showing how "an "unrelated third party equipped with the information purportedly disclosed by [Univision]" could feasibly determine the identity of the user. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 180 (S.D.N.Y. 2015). Accordingly, the Complaint fails to plausibly allege that the Google and Innovid "unique ID" constitutes "personally identifiable information" under the VPPA.

**B. The allegedly disclosed geolocation data cannot identify a particular person.**

The Complaint alleges that the Website transmits "precise geolocation" to Google and Innovid. Complaint ¶ 17. But "precise geolocation" of what? To be personally identifiable information under the VPPA, geolocation data must be sufficiently precise to reveal the "*specific person*" who watched the video. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) (emphasis in original) (finding the IP address of a device, even if coupled with other identifiers, insufficient to identify a specific person).

Here, the Complaint alleges that the Website discloses "precise geolocation" in the form of latitude and longitude coordinates to Innovid.[2] *See* Complaint ¶ 18. However, the Complaint does not allege that the latitude and longitude coordinates correspond to the *location of the user*. It is at least equally likely, based on the allegations of the Complaint, that the coordinates correspond to the location of the user's internet service provider, the city or region associated with the IP address, or the location of the server to which the device is connected, among other things.

[2] Although asserting in conclusory fashion that the Website discloses "precise geolocation" to Google and Innovid, *see* Complaint ¶ 17, the Complaint includes no allegations or screenshots purporting to demonstrate disclosure of geolocation data to Google.

In other words, the Complaint yields competing inferences but offers no allegation of fact to support the plausibility of the inference that the Complaint seeks to draw (that the coordinates correspond to the *location of the user*). *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567–570 (2007). Thus, the Complaint fails to "nudg[e] [the] claim[] across the line from conceivable to plausible[.]" *Id.* at 569. Accordingly, the Complaint fails to plausibly allege that the alleged geolocation data reveals "personally identifiable information" under the VPPA.

Furthermore, Plaintiff's own allegations fatally foreclose the possibility that the alleged geolocation data reveals personally identifiable information. The Complaint includes several screenshots that purport to illustrate how the information allegedly transmitted by the Website can be used to pinpoint geolocation. Complaint ¶ 18. The second screenshot purports to show that when the user watched a video, the following string of information was included in the transmission: "country=US," "city=New York" "state=NY," "zip=10118," "geo_lat=40.7123," and "geo_lon=-74.0068." The third screenshot pinpoints the location to which these coordinates correspond on a map of New York. *Id.* As shown in the Complaint, this pinpoint is immediately west of the northern terminus of the Brooklyn Bridge, a location that any New Yorker would immediately recognize as "smack dab" in the middle of New York City Hall Park—not on a residential street or any other location from which anyone could possibly determine the identity of a user.[3] *See id.* Thus, "[d]raw[ing] on its experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Court can readily conclude that the coordinates do not correspond to the

[3] Univision respectfully requests that the Court take judicial notice of the fact that the pinpoint in the second screenshot of paragraph 18 corresponds to New York City Hall Park. *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) (confirming that a court may judicially notice geographical facts); *Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography."). Inputting a latitude of 40.7123 and longitude of -74.0068 on LatLong.net directs to New York City Hall Park. Available at https://www.latlong.net/Show-Latitude-Longitude.html, last accessed March 25, 2024.

location of the user and that no "ordinary person" could feasibly use the coordinates to identify a specific user.[4]

Because the Complaint's allegation that the Website discloses "personally identifiable information" in the form of geolocation is inconsistent with geographical facts subject to judicial notice, the Complaint fails to state a plausible VPPA claim. *See Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 153 (S.D.N.Y. 2023) (confirming that a Court may "disregard allegations in a complaint that contradict or are inconsistent with judicially-noticed facts.").

**CONCLUSION**

As set forth in detail above, the Complaint should be dismissed for failure to state a claim because it fails to plausibly allege that Plaintiff is a "consumer" under the VPPA or that Univision disclosed "personally identifiable information" under the VPPA.

Respectfully submitted,
HOLLAND & KNIGHT LLP



Mark S. Melodia
Christine N. Walz
31 W 52nd Street
New York, NY 10019
Tel: (212) 513-3583
Fax: (212) 358-9010
mark.melodia@hklaw.com
christine.walz@hklaw.com

*Counsel for Defendant*

---

[4] The FAQs published on Innovid's website confirm that "Innovid uses IP addresses to geolocate[.]" *See* https://help.innovid.com/hc/en-us/articles/11012580679068-FAQs-Analyzing-the-Data, last accessed March 27, 2024. Thus, it is likely that the location information in Plaintiff's example is derived from an IP address, not the specific location of the user, and that at best the example in Plaintiff's Complaint shows that Innovid allegedly received the geolocation of a New York IP address corresponding to New York City Hall Park, not to the location of a residence or any other information that can identify a specific user.